### In re BOCASH.
No. 137.

District Court of Alaska. First Division. Juneau.
Feb. 28, 1942.

Harold Bates, of Juneau, referee.

Mildred R. Hermann, of Juneau, for bankrupt.

ALEXANDER, District Judge.

This matter is before the court on the bankrupt's claim of homestead in the house and lot listed by him as part of his bankrupt estate, and claimed by him as exempt after such homestead claim had been rejected by the trustee herein.

That the house and lot in question is exempt as a homestead there can be no question.

The facts before the court are in substance that petitioner bought the house which he claims as exempt under

the homestead laws, on May 12, 1939, for a consideration of $900.

In the latter part of May, 1939, the bankrupt's widowed sister and her child, Russian refugees in indigent circumstances, arrived in Juneau and took up their residence with the bankrupt, her brother, and lived with him in this house until the following December, during the whole of which period he was their sole support.

In August or September of 1939, petitioner's illegitimate child and its mother became members of his family, where they have since lived and been supported by him.

On April 22, 1940, and within four months of the filing of the bankrupt's petition in bankruptcy, the bankrupt married the mother of his illegitimate child, thus legitimatizing the child.

On May 8, 1940, the bankrupt filed his petition in bankruptcy, and on May 9, 1940 was adjudged a bankrupt.

We believe that under the law the petitioner was legally the head of a family from the time his sister and her child came to live with him and were supported by him, and that he continued to be the head of a family after his illegitimate child and its mother came to live with him, before the departure of his indigent sister and her child, and up to the date of the filing of his petition in bankruptcy.

Concerning this, we hold that the bankrupt was the head of a family continuously from the date his indigent sister came to live with him and was supported by him, and continued after she left, and his illegitimate child came to live with him and were supported by him as members of his family. He was entitled to claim the status as the head of a family at all times after his illegitimate child came to live with him and was supported by him as such, irrespective of the fact that the mother of such illegitimate child resided with him on the premises, she not being entitled to be regarded as a member of the family or entitled to his support.

■

The law as to who is "head of a family" can be found set out at great length in 19 Words and Phrases, Perm. Ed., at pages 132 to 150 inclusive, and in the extended note to Wade v. Jones, 20 Mo. 75, 61 Am.Dec. 584-586; Moyer v. Drummond, 32 S.C. 165, 10 S.E. 952, 7 L.R.A. 747, 17 Am.St.Rep. 850; Owens v. Altsheller & Co., 263 Ky. 727, 93 S.W.2d 844; Lane v. Phillips, 69 Tex. 240, 6 S.W. 610, 5 Am.St.Rep. 41.

■ Nor is the fact that the bankrupt was insolvent and knew himself to be insolvent at the time he acquired the homestead in question, and acquired said homestead with non-exempt assets, as claimed by the creditors in this case, sufficient to defeat the bankrupt's claim to homestead in the property.

It is said in Kelly v. Sparks, C.C., 54 F. 70, 72, "It seems to be well settled * * * that an insolvent debtor, knowing himself to be insolvent, may acquire a homestead for himself and family, and hold the same exempt from his creditors, although purchased with non-exempt assets, and that fraud cannot be imputed to such fact."

And in Paxton v. Sutton, 53 Neb. 81, 73 N.W. 221, 68 Am.St.Rep. 589, the court said: "A debtor may acquire a homestead and hold it exempt from execution for pre-existing debts not then reduced to judgment, although the homestead is purchased with, or obtained by exchange for, nonexempt property," and that fraud cannot be imputed to such an act.

In McConnell v. Wolcott, 70 Kan. 375, 78 P. 848, 3 L.R.A.,N.S., 122, 109 Am.St.Rep. 454, the court there said:

"The homestead exemption may be asserted even as to property purchased by an insolvent debtor with the proceeds of nonexempt property, in the absence of any specific equity existing in favor of a creditor, and the fact that the purchase is made for the very purpose of acquiring a homestead exempt from execution does not alter the rule. * * *

"The service on a judgment debtor of a notice requiring him to appear and answer regarding his assets, in a proceeding supplementary to and in aid of execution, without any order being made forbidding the transfer or other disposition of his property by him, does not give the judgment creditor any lien on his funds, nor prevent him from purchasing and paying for a homestead with them, which cannot be sold for the satisfaction of the judgment."

It follows that the bankrupt is entitled to have the homestead claimed by him and described in his schedules set aside as exempt, and it is so ordered; and the bankrupt's motion to set aside such homestead as exempt is sustained. An appropriate order may be presented in accordance with this opinion.