## In re WARDLAW.

(District Court, N. D. Georgia. W. D.   January 22, 1912.)

No. 502.

1. BANKRUPTCY (§ 396*)—HOMESTEAD—RIGHTS OF CREDITORS.

The reversionary interest of a bankrupt in a homestead acquired under Const. Ga. 1868, art. 7, which entitled the head of a family to a homestead valued at $2,000, exempt from execution, etc., cannot be sold by the trustee for the benefit of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 668; Dec. Dig. § 396.*]

2. BANKRUPTCY (§ 396*)—HOMESTEAD—ACCRETIONS—RIGHTS OF CREDITORS.

Accretions made by the head of a family to a homestead acquired under Const. Ga. 1868, art. 7, which entitled the head of a family to an exempt homestead valued at $2,000, become a part of the homestead estate, and are not subject to the claims of creditors in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 668, 670; Dec. Dig. § 396.*]

In the matter of W. E. Wardlaw, bankrupt.   On petition to renew an order of the referee directing sale of the bankrupt's reversionary interest in homestead property.   Order reversed.

Hatcher & Hatcher, for bankrupt.

Wynn & Wohlwender, for trustee.

NEWMAN, District Judge.   While the Constitution of Georgia of 1868 was still in force, there was set apart to the bankrupt, the head of a family, as an exemption under the constitutional provision with reference thereto, a homestead in certain lands in Chattahoochee county, Ga., where he then resided.   Some years later, to wit, in 1885, he applied to the judge of the superior court of Chattahoochee county for an order to sell the lands embraced in the homestead and situated in Chattahoochee county for reinvestment in lands in Muscogee county, under the statute of Georgia.   An order was granted him by the court to that effect.   This was accordingly done and the proceedings were duly recorded, as required by the statute of Georgia, in Muscogee and Chattahoochee counties.   The homestead seems to have been set apart for the benefit of the bankrupt's wife and children.   The children have all become of age, but the wife is still living, and she and her husband reside on the property in question.

It is conceded that the lands, being near Columbus, Ga., have enhanced greatly in value, and are worth very much more than the homestead exemption even under the Constitution of 1868.   On the 29th day of March, 1911, the bankrupt filed his voluntary petition, and was duly adjudged a bankrupt.   On September 25, 1911, the trustee in bankruptcy filed a petition before the referee praying that the bankrupt be required to appear before the referee, and show cause, if any, why he should not be adjudged in contempt of court for failing and refusing to schedule the lands so set apart for the homestead by reinvestment, as stated, or his reversionary interest therein, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

also why, said reversionary interest in said homestead should not be sold, free from all incumbrances whatever, subject only to the beneficial interest of the bankrupt's wife, Clara Wardlaw. There was a demurrer and an answer.

[1] After hearing, the referee entered an order directing the trustee to sell the reversionary interest of Wardlaw in the land, subject to the homestead estate. The case is now brought before the court here on a petition for review. The question presented is, Can this be done? That is, Can the reversionary interest of a bankrupt in a homestead estate which has not terminated be sold by a trustee in bankruptcy for the benefit of creditors? Under the law of Georgia, can the trustee subject the reversionary interest of a bankrupt in a homestead estate by levy or execution thereon and sell the same?

The constitutional provision with reference to the homestead estate by the Constitution of 1868, art. 7, under which this homestead was allowed, is as follows:

"Each head of a family, or guardian, or trustee, of a family of minor children, shall be entitled to a homestead of realty to the value of two thousand dollars, in specie, and personal property to the value of one thousand dollars in specie, both to be valued at the time they are set apart. And no court, or ministerial officer in this state, shall ever have jurisdiction, or authority, to enforce any judgment, decree, or execution against said property so set apart, including such improvements as may be made thereon, from time to time—except for taxes, money borrowed and expenses in the improvement of the homestead, or for the purchase money of the same, and for labor done thereon, or material furnished therefor, or removal of encumbrances thereon. And it shall be the duty of the General Assembly, as early as practicable, to provide, by law, for the setting apart and valuation of said property, and to enact laws for the full and complete protection and security of the same to the sole use and benefit of said families as aforesaid."

In Jolly v. Lofton, 61 Ga. 154, the Supreme Court of Georgia decided that this could not be done. In delivering the opinion of the court in that case, Chief Justice Warner said:

"By the Constitution of 1868 no court or ministerial officer in this state shall ever have jurisdiction or authority to enforce any judgment, decree, or execution against the homestead property set apart, including such improvements as may be made thereon from time to time, except for taxes, etc. The homestead is set apart for the use of the debtor's family as contemplated by the Constitution, and so long as that homestead right continues to exist, no court or ministerial officer of this state has any jurisdiction or authority to enforce any judgment, decree, or execution against the homestead property, which necessarily includes every interest therein, reversionary or otherwise, but, when all the beneficiaries of the homestead property cease to exist, then, and not until then, can the reversionary interest of the defendant in execution be levied on and sold, for the simple reason that the Constitution of the state prohibits it from being done. Heard v. Downer et al., 47 Ga. 629; Moughon v. Masterson, 59 Ga. 836."

In Haslam v. Campbell & Jones, 60 Ga. 650, in the opinion of the court by Judge Jackson, this is said:

"The court charged that the remainder interest in the tract of four hundred and seventy-seven acres was subject to levy and sale at this time. Under the decision in Jolly v. Lofton, at the present term, this charge was erroneous."

In Holloway v. Holloway, 86 Ga. 576, 580, 12 S. E. 943, 944 (11 L. R. A. 518, 22 Am. St. Rep. 484), in the opinion by Judge Simmons, it is said:

"This court has held in several cases, where creditors were seeking to sell the homestead after the minors arrived at age, that it could not be done, because the homestead did not expire till the death of the widow. Haslam v. Campbell, 60 Ga. 650; Groover v. Brown, 69 Ga. 60."

It is perfectly clear, therefore, that under the law of Georgia, as settled by the Supreme Court of the state, the reversionary interest in the land is not subject to levy and sale.

It may be proper to remark here that in section 9 of article 9 of the Constitution of 1877 it is provided that:

"Parties who have taken a homestead of realty under the Constitution of 1868 shall have the right to sell said homestead and reinvest the same, by order of the judge of the superior courts of this state."

No question is made, however, as I understand it, that the sale and reinvestment of this property complied with the law in all respects.

Does the fact that the head of the family becomes a bankrupt after he has had an exemption so set apart under the law of the state change the situation, and can the reversion or remainder interest in it be sold by the trustee in bankruptcy for the benefit of creditors? I think not. In the first place, the effect of the decisions of the Supreme Court of the state construing the constitutional provision, as I understand it, is that, so long as the homestead right continues to exist, no judgment, decree, or execution shall be enforced against the homestead property, and that this homestead property includes every interest therein, reversionary or otherwise, and, further, that the enjoyment of the homestead estate shall not be interfered with by any such proceeding. This is the homestead in Georgia, the right to have it free from sale by process from the courts until the homestead estate terminates.

[2] As to the enhancement in value of the exempted property, it is only necessary to cite the decision of the Supreme Court of the state in Powers et al. v. Rosenblatt & Co. et al., 113 Ga. 559, 38 S. E. 969, in which it is held that accretions made by the head of the family become a part of the homestead estate. In the opinion by Chief Justice Simmons it is said:

"It was argued here that the accretions made by the head of the family to the exempted property should be held liable for the payment of these creditors. It is now well settled by the decisions of this court that the accretions become a part of the exemption, and are no more subject to levy and sale than is the original exemption. This has been held to be true even where the head of the family has exchanged or sold the exempted property without any authority to do so, and the accretions have been purchased with the proceeds of the exchange or sale. Kiser v. Dozier, 102 Ga. 429 [30 S. E. 967, 66 Am. St. Rep. 184]; Taylor v. James, 109 Ga. 333 [34 S. E. 674]."

The Supreme Court of Georgia, in a recent case (Lathrop et al. v. Pate et al., 136 Ga. 36, 70 S. E. 569), in a unanimous opinion, ruled as follows:

"Where in bankruptcy proceedings instituted under the bankrupt act of [March 2] 1867 [chapter 176, 14 Stat. 517], certain lands were designated as exempt and set apart to the bankrupt in 1875, the District Court of the United States as a court of bankruptcy was without jurisdiction to deal further with such property or to pass an order authorizing the sale of the 'reversionary' right of the bankrupt; and an order authorizing such sale was void because of the lack of jurisdiction in the court to pass the same" [citing In re Bass, 3 Woods, 382, Fed. Cas. No. 1,091, and Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061].

This case, besides being strong authority on the right of the bankrupt court to make such an order and such a sale, shows that the title conveyed thereby would not be recognized as a valid title in Georgia.

In the decision of the Supreme Court of the United States in Lockwood v. Exchange Bank, 190 U. S. 295, 23 Sup. Ct. 753, 47 L. Ed. 1061, it is held that:

"Under the bankruptcy act of [July 1] 1898 [chapter 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 2418)], the title to property of a bankrupt which is generally exempted by the law of the state in which the bankrupt resides remains in the bankrupt and does not pass to the trustee, and the bankrupt court has no power to administer such property, even if the bankrupt has, under the law of the state, waived his exemption in favor of certain of his creditors. The fact that the act confers upon the bankruptcy court authority to. control exempt property in order to set it aside does not mean that the court can administer and distribute it as an asset of the estate. The two provisions of the statute must be construed together, and both be given effect."

Mr. Justice White in the opinion in the Lockwood Case quotes from the decision by Mr. Justice Bradley in Re Bass, 3 Woods, 382, Fed. Cas. No. 1,091, as follows:

"Not only is all the property exempted by the state laws, as those laws stood in 1871, expressly excepted from the operation of the conveyance to the assignee, but it is added in the section referred to, as if ex industria, that 'these exceptions shall operate as a limitation upon the conveyance of the property of the bankrupt to his assignee, and in no case shall the property hereby excepted pass to the assignee or the title of the bankrupt thereto be impaired or affected by any of the provisions of this title.' In other words, it is made as clear as anything can be that such exempted property constitutes no part of the assets in bankruptcy. The agreement of the bankrupt in any particular case to waive the right to the exemption makes no difference. He may owe other debts in regard to which no such agreement has been made. But, whether so or not, it is not for the bankrupt court to inquire. The exemption is created by the state law, and the assignee acquires no title to the exempt property. If the creditor has a claim against it, he must prosecute that claim in a court which has jurisdiction over the property, which the bankrupt court has not."

After making the above quotation, Mr. Justice White proceeds:

"We think the terms of the bankruptcy act of 1898 * * * as clearly evidence the intention of Congress that the. title to the property of a bankrupt generally exempt by state laws should remain in the bankrupt, and not pass to his representative in bankruptcy, as did the provisions of the act of 1867, considered in Re Bass. The fact that the act of 1898 confers upon the court of bankruptcy authority to control exempt property in order to set it aside, and thus exclude it from the assets of the bankrupt estate to be administered, affords no just ground for holding that the court of bankruptcy must administer and distribute, as included in the assets of

the estate, the very property which the act in unambiguous language declares shall not pass from the bankrupt or become part of the bankruptcy assets."

It may be that where the property constituting the homestead has enhanced in value, as it apparently has in this case, it is hard on the creditors, when the head of the family becomes a bankrupt, that it should be carried through the bankruptcy proceedings as an exemption and the bankrupt obtain a discharge from his debts, but it appears in this case that the homestead allowed the bankrupt was duly recorded, as required by law, in Chattahoochee county and also in Muscogee county for the reinvestment. Creditors, therefore, must be charged with notice of the situation when they gave credit to the bankrupt, and, as the law protects it, the courts have nothing to do but enforce that law as it stands.

Of course, if any creditor has a waiver of exemption as against his debt, there would exist, under the decision of the Supreme Court in the Lockwood Case, "an equity entitling him to a reasonable postponement of the discharge of the bankrupt, in order to allow the institution in the state court of such proceedings as might be necessary to make effective the rights possessed by the creditor." If creditors having no such waivers have any rights as against this property in question, such rights must be asserted in courts of competent jurisdiction elsewhere. The bankruptcy court has no power to accord them relief.

I disagree, therefore, with the action of the referee in directing the sale by the trustee of the reversionary interest in the homestead exemption in question. An order in accordance herewith may be entered.