### SMITH BROS., Inc., v. LUCAS et al.

No. 1329—5438.

Commission of Appeals of Texas, Section A.

April 30, 1930.

Beall, Worsham, Rollins, Burford & Ryburn and A. S. Rollins, all of Dallas, for plaintiff in error.

Church, Read & Bane and F. H. Lowrance, all of Dallas, for defendants in error.

George T. Burgess, of Dallas, amicus curiæ.

HARVEY, P. J.

This suit was brought by Smith Bros., Inc., the plaintiff in error, against W. J. Lucas and others to recover of Lucas the amount of a certain paving assessment, and to foreclose an alleged paving lien on a portion of a certain city lot in Dallas. The trial court rendered judgment in favor of all defendants. On appeal, the Court of Civil Appeals reversed the portion of the judgment which denied a recovery of the sum sued for, rendered a personal judgment against Lucas for the sum sued for, and affirmed the judgment of the trial court in all other respects. 15 S.W.(2d) 27.

So far as necessary to state them here, the facts are substantially as follows:

On January 23, 1924, the governing body of the city of Dallas duly passed a resolution ordering the pavement of Seventh street, under plans and specifications duly prepared and filed by the city engineer. The plaintiff in error was awarded the contract for such pavement, the cost of which was to be assessed against the property abutting on said street, and against the owners of such property. All preliminary matters required by the city charter to be performed, in order to fix a personal liability for such cost on the respective property owners and to fix a lien

on the property, were duly performed by the governing body of the city, and the plaintiff in error duly carried out its paving contract.

Among other preliminary requirements, the city charter provides for a hearing of interested parties relative to the proposed paving and to the amount to be charged against the respective owners and their property. By a succeeding charter provision it is provided:

"When the hearing above mentioned has been concluded, the board of commmissioners shall, by ordinance, assess against the several owners of property and against their property abutting upon the public highway or highways, or part thereof, ordered to be improved; such proportionate part of the costs of such improvements as by said board may have been adjudged against said respective owners and their property. Said ordinance shall fix a lien upon such property and declare the respective owners thereof to be personally liable for the respective amounts to be assessed. * * * The cost of any such improvement assessed against any. property or owner thereof, together with all costs and reasonable expense in collecting the same, including reasonable attorney's fees when incurred, shall constitute a personal claim against such property owner, and shall be secured by a lien on such property superior to all other liens, claims or titles, except city, county and state taxes, and such personal liability and lien may be enforced either by suit in any court of competent jurisdiction, or by sale in the same manner, as far as applicable, as sales are authorized to be made by the city of Dallas for the nonpayment of taxes. * * * In any suit brought under the provisions of this section, it shall be proper to join as defendants two or more property owners who are interested in any single improvement or any single contract for such improvement; the person or persons who own property at the date of any ordinance providing for the assessment thereof, shall be severally and personally liable for their respective portions of the said assessment. The lien of such assessments shall revert back and take effect as of the date of the original resolution ordering the improvement, and the passage of such resolution shall operate as notice of such lien to all persons. * * *"

On September 21, 1925, the governing body of the city passed an ordinance in conformity with the above-quoted charter provisions. This ordinance fixed the sum assessed against Lucas, declared a lien on the property in controversy here, and ordered a paving certificate to be issued to the plaintiff in error.

When the original resolution was passed on January 23, 1924, and for some time prior thereto, the family of Lucas, consisting of himself, his wife,. and three minor children of the latter by a former marriage, occupied the property in controversy as a home. The property belonged to the separate estate of Mrs. Lucas. The family continued to use and occupy the place as a home until February 20, 1925, when a decree of divorce was duly entered dissolving the bonds of matrimony between Lucas and his wife. For a short time immediately prior to the divorce decree, Lucas himself did not stay at home, on account of being restrained by injunction from. doing so. But, immediately after the divorce decree was rendered, he returned to the place and has lived there ever since; and there is basis for the fact inference that the three minor children of Mrs. Lucas have continued ever since to live there with Lucas. On February 21, 1925, the day after the divorce decree was entered, Lucas bought the place from Mrs. Lucas, paying the consideration in cash, and she executed to him a deed therefor. Mrs. Lucas thereupon left the place. On September 8, 1927, Lucas duly executed and caused to be recorded an instrument of adoption whereby he formally adopted said three minor children of his former wife.

The plaintiff in error contends that, in accordance with a provision to that effect contained in the city charter and said ordinance, the lien of the assessment against the Lucas property, as fixed by the ordinance of September 21, 1925, reverted back and took effect as of date of the original resolution of January 23, 1924. It is unnecessary to decide this question now, since we have concluded that the property in controversy never at any time became chargeable with such lien. By section 50, art. 16, of the state Constitution, it is declared, in effect, that no lien, such as the one here asserted, on the homestead of a family, "shall ever be valid." The evidence conclusively shows that, when the original resolution was passed in January, 1924, the lot in controversy was the home of the Lucas family, and so continued to the time the divorce decree was entered. During all this time Lucas stood in loco parentis to his stepchildren, and the latter were constituents of his family. Gorman v. State, 42 Tex. 221. The divorce decree did not result in a dissolution of these relations. The evidence is such as to justify the inference that Lucas continued to recognize and treat the children as dependent members of his household, and that the use of the property as a home for himself and the children continued to the time of trial of this case in the court below. Having thus continued to maintain a quasi parental relation to the children, Lucas was under a moral obligation for their care and support, and he and the children constituted a "family" within the meaning of the constitutional provision to which we have referred. Wolfe v. Buckley, 52 Tex. 641; Holloway v. Holloway, 86 Ga. 576, 12 S. E. 943, 11 L. R. A. 518, 22 Am. St. Rep. 484.

It may also be properly inferred from the facts in evidence that, at the very time that Lucas was divested of his marital rights in the property, he intended to acquire title to the property, as he did in fact do the next day after the divorce decree was rendered, and to continue the use of same as a home for himself and the children, as was in fact done. There was never an abandonment by Lucas of the use of the property as a home for his family. It follows that at no time, from the beginning to the end of the proceedings by which the property was undertaken to be charged with a paving lien, did the property cease to be the family homestead.

 The lien sought to be foreclosed is invalid. But Lucas became legally charged with personal liability for the sum sued for, and the Court of Civil Appeals correctly rendered judgment against him therefor.

We therefore recommend that the judgment of the Court of Civil Appeals be in all things affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.